[Cite as *State v. Jones*, 2011-Ohio-2063.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

     Plaintiff-Appellee

v.

DWAYNE R. JONES

     Defendant-Appellant


Appellate Case No. 23811

Trial Court Case No. 2008-CR-1210/2

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of April, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

ANTHONY R. CICERO, Atty. Reg. #0065408, The Cicero Law Offices, LLC, 500 East Fifth Street, Suite 100, Dayton, Ohio 45402
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}  Defendant-appellant Dwayne R. Jones appeals from his conviction and sentence on one count of Possession of Crack Cocaine in an amount exceeding 100 grams, with a major-drug-offender specification, one count of Possession of Marijuana in an amount between 1,000 and 5,000 grams, one count of Illegal Manufacture of a Schedule I or II controlled substance, one count of Possession of Cocaine in an amount between 25 and 100 grams, and one count of Having Weapons While Under a Disability.  The first four counts were tried to a jury; the Having Weapons While Under a Disability count was tried to the bench.

{¶ 2}  We conclude that under the authority of *State v. Spradlin*, 187 Ohio App.3d 767, 2010-Ohio-2140, an appeal involving a co-defendant, the trial court erred in admitting an unduly prejudicial photograph, over objection, of Jones posing with others in a "gangster" pose.  This error was sufficiently prejudicial to merit reversal of Jones's four drug-related convictions.  Since Jones, who testified, admitted to having possessed a handgun, the error in admitting the photograph was not sufficiently prejudicial to merit reversal of his Having a Weapon Under Disability conviction.

{¶ 3}  Also under the authority of *State v. Spradlin*, supra, the trial court did not err in overruling a motion to suppress evidence obtained as the ultimate result of a protective sweep of the residence where Jones was found.

{¶ 4}  Various claims of ineffective assistance of counsel are moot, other than with respect to Jones's conviction for Having a Weapon Under Disability, and insufficiently prejudicial with respect to that conviction, the elements of which were undisputed.

{¶ 5}  The journal entry of Jones's conviction for Having a Weapon Under Disability, which was tried to the bench, satisfied the requirements of *State v. Baker*, 119 Ohio St.3d 197,

2008-Ohio-3330.

{¶ 6}  Accordingly, that part of the judgment convicting Jones of Having a Weapon Under Disability, and imposing sentence therefor, is Affirmed.  That part of the judgment convicting Jones of the four drug-related offenses, and imposing sentence therefor, is Reversed, and this cause Remanded for further proceedings with respect to those charges.


I

{¶ 7}  The facts in this case are expounded extensively in *State v. Spradlin*, supra, and are worth quoting here, even though the factual exposition in that opinion was centered somewhat on Jessica Spradlin, the defendant in that case:

{¶ 8}  "At the * * * hearing on the motion to suppress, Scott Donley, a parole officer with the State of Ohio Adult Parole Authority and a former member of the Southern Ohio Fugitive Apprehension Strike Team ('SOFAST'), and Rodney Barrett, a detective in the narcotics bureau with the City of Dayton Police Department, testified for the State.  Spradlin testified on her own behalf, and Barrett was called on rebuttal.

{¶ 9}  "According to Donley, he had been deputized as part of SOFAST to apprehend individuals with outstanding warrants, including [Raymond] McDaniel.  A 'Wanted Poster' of McDaniel was admitted into evidence, and it provided in part, 'Raymond "Bird" McDaniel is wanted by the United States Marshals Service for felonious assault with a deadly weapon. McDaniel is wanted in connection with a shooting that left a man paralyzed.  McDaniel should be considered armed and dangerous. * * * .'  Donley had received a tip that McDaniel might be located at a basement apartment at 2011 Riverside Drive, which is where Spradlin lived with

Jones. Donley and four other officers proceeded to that location at approximately 10:30 in the morning on March 24, 2008. According to Donley, he and the other officers observed the building from the outside for about 30 minutes, and upon reaching the apartment, knocked repeatedly on the door for 'probably 25 minutes. And then during that time we were able to make contact with Miss Spradlin * * * through the door, and began having banter back and forth trying to get her to open the door.' Donley stated that they identified themselves to Spradlin. Donley heard 'scurrying around and moving around, things moving around inside the door,' and '[p]eople within the house, and I believe you could hear conversations, whispering.' Eventually, Donley heard McDaniel say, 'I'm in here,' and then 'That's me, I'm in here.' The door opened, and 'McDaniel was arrested inside the doorway and ordered to the ground, placed in handcuffs, and then we went inside the house to clear the house.' Donley stated he had to step over McDaniel inside the apartment.

{¶ 10} "In addition to Spradlin, Jones was also inside the apartment, 'walking around * * * in the back area of the apartment.' From the doorway, the officers had a view of the living area, but they could not see the kitchen area, the two bedrooms or the bathroom. According to Donley, given the amount of time it took for Spradlin to open the door, and given the sounds coming from inside the apartment while the door was closed, the officers assumed there were other people inside the apartment. For their safety, the officers handcuffed Spradlin and Jones and placed them on the living room sofa. They were not under arrest, but 'they were being investigated for possible obstruction charges because of the length of time that they were taking to answer the door and they were keeping us from arresting Mr. McDaniel.'

{¶ 11} "In performing the sweep of the house, Donley stated the officers were looking

for 'additional people.' After lifting a bed skirt to look under the bed in one of the bedrooms, Donley observed a large shopping bag on its side, with the open end facing directly towards him, and it was full of several gallon size freezer bags of marijuana. He also recognized the smell of marijuana. He did not touch the items and contacted Barrett at home and advised him about the marijuana so that Barrett could secure a search warrant for the apartment. While the officers waited, Spradlin stated that she was pregnant, and she asked to use the bathroom. After being told that the bathroom would first have to be searched for weapons, Spradlin gave her consent to the search of the bathroom. According to Donley, 'we went in and searched it and found a firearm inside the tank of the toilet, and there was a bag of suspected cocaine.' Donley *Mirandized* all three defendants.

{¶ 12} "According to Barrett, he secured the subsequent search warrant, after initially responding to the apartment to gain information for the affidavit. Barrett advised Spradlin of her rights, she agreed to speak to him, and he interviewed her for three to five minutes before she terminated the interview. When Barrett returned about two hours later with the search warrant, the apartment was searched. At the time, the three defendants had been transported to the jail.

{¶ 13} "Spradlin testified that she is 21 years old, and that she was expecting a baby on October 12th. Spradlin was leasing the apartment where the above events took place, and Jones was her boyfriend and is the father of her baby. Spradlin had only lived in the apartment for less than a month when she was arrested. On the morning of the 24th, Spradlin maintained she awoke to 'a big bang at the door, like bang, bang, bang!' When she looked out the window she observed 'a man outside with a big gun, and he had on just like normal jeans and a shirt.'

She did not see any police officers or police cars, and she did not open the door because she did not know who was knocking. Spradlin and Jones approached the door, and the men outside stated they were police officers and that they would leave as soon as they found 'the person we're looking for.' Spradlin and Jones sat down on the couch, and McDaniel approached the door. Spradlin recognized him as Jones' friend, and she was unaware that he had spent the night in the apartment. Spradlin stated McDaniel had stayed at their apartment recently when he was having problems with his girlfriend.

{¶ 14} "According to Spradlin, McDaniel opened the door, and the officers, with guns drawn, told him to put his hands up. Spradlin stated the officers instructed him to get on the ground, and that when he did so, 'he was completely outside the door.' Spradlin testified that the officers returned McDaniel to the apartment, and they asked her and Jones if anyone else was present. Spradlin said no, and 'another officer that was there, the one that handcuffed us, he went off into the kitchen, and he just started slamming, opening up the drawers and the cabinets. All we could hear was the slamming of the doors.' Spradlin stated that in the course of the search of the apartment, 'they said that they had found something, but by that time another officer had took me outside, and he was like asking me about drugs and weapons and stuff. And I just told him, "Like, I don't - - I don't know what you're talking about." And I said, "All right, you're supposed to have a search warrant anyways for, you know, they're ramshacking (sic) through everything." ' Spradlin stated that she asked to use the bathroom immediately before being taken to jail, and at that time, the officers had 'already been in there [without Spradlin's consent] and found whatever they found in the bathroom. That's why they said they were taking me to jail.'

{¶ 15} "Barrett was recalled to the stand, and he testified regarding the police report he authored, which provided in part that Spradlin opened the door after five to 10 minutes of knocking, and that the officers then observed McDaniel in the back of the apartment.

{¶ 16} "In denying the motion to suppress, the trial court determined that the officers were entitled to conduct a protective sweep of the house. It was significant to the trial court that McDaniel was suspected to be armed and dangerous, and that the officers heard noises and voices inside the apartment during the delay before the door was opened. The court further determined that the marijuana was in plain view, and that its smell, recognized by Donley, was sufficient to establish probable cause. Regarding the search of the bathroom, the court determined that the surrounding circumstances 'are largely a factual issue,' concluding that the officers searched the toilet tank prior to Spradlin's use of the bathroom for their safety. Finally, the court determined that any statements made by Spradlin were 'after a knowing, intelligent, and voluntary waiver.'

{¶ 17} "At trial, the following witnesses provided testimony for the state relevant to Spradlin's conviction: Donley; Barrett; Andrew Siefring, a parole officer who responded to Spradlin's apartment on March 24, 2008; Rick Fleming of the Springfield Police Department, who also responded to Spradlin's apartment; and Brooke Ehlers, a forensic chemist at the Miami Valley Regional Crime Laboratory. Timothy Duerr, a forensic scientist for the Miami Valley Regional Crime Laboratory, and Detective Daryl Smith of the Dayton Police Department were called by Spradlin, and Spradlin testified on her own behalf.

{¶ 18} "Donley testified that he found digital scales and a box of baggies in the bag of marijuana under the bed. Siefring testified that he performed the search of the bathroom prior

to Spradlin's use thereof, and he found 'a black Glock 40, as well as suspected crack cocaine' in the toilet tank.

{¶ 19} "Fleming testified that he assisted in executing the search warrant at Spradlin's apartment. Fleming stated that he found $8,200.00 and four handguns in the other bedroom of the apartment, under a dresser. Fleming did not know whose bedroom it was, but the room also contained men's and women's clothing. There was women's clothing in a dresser in the room. Fleming also found a pill bottle containing Alprazolam in the dresser.

{¶ 20} "Barrett testified that Jones told him the bedroom where the guns and money were found was his bedroom, and Spradlin also indicated that the bedroom was hers.

{¶ 21} "Ehlers testified that the drugs seized from the apartment were submitted to her for analysis, and she identified marijuana with a net weight of 1, 537.95 grams, crack cocaine with a net weight of 122.35 grams, cocaine with a net weight of 88.30 grams, smaller amounts of crack cocaine and amounts of cocaine residue. According to Ehlers, 'A controlled substance is something that is regulated by the Ohio Board of Pharmacy as a dangerous type of drug. They are placed into five different categories based on their potential for abuse and the Schedule I being the most severe, Schedule V being the least severe.' Ehlers testified that cocaine and crack cocaine are both Schedule II controlled substances, and marijuana is a Schedule I controlled substance.

{¶ 22} "Barrett testified regarding a photograph of the kitchen in the apartment, stating that it was taken to 'show that it's a house that someone lives in and uses on a daily basis. A lot of times when we come into drug houses, if they're set up just to sell drugs out of, or they sell smaller quantities of drugs, the only thing you find in there is a TV, sometimes just like a

Playstation, just something to pass the time while they're dealing the drugs, usually no one will live there. And then you get some of your larger quantities of drugs where people keep it where they live, that's what we were showing here; that this is a house that someone lives in and that uses on a daily basis and stays overnight in.' Barrett stated two digital scales were found under the kitchen sink, and they contained 'a lot of white powder, which we also scraped as much as we could off * * * which was later found to be cocaine.' Also under the sink Barrett found 'a Pyrex dish, a measuring bowl, * * * a two-cup size glass and inside of that * * * was a spoon or fork that had cocaine residue.' Barrett also found 'two forks and a knife * * * underneath the kitchen cabinets with the microwave above it. There was a fork actually in the Pyrex dish there and then there was a knife and the other fork and all three are caked with cocaine or crack-cocaine residue on them.' Barrett also retrieved an 'aluminum pan with cocaine residue in it.'

{¶ 23} "Barrett further testified, 'when we got back to our office to weigh out and to start tagging up the property, we noticed that the * * * crack cocaine that was recovered in the back of the toilet had the same shape as the bottom of the Pyrex dish. It's very common * * * how crack cocaine is cooked, using a microwave.' Barrett stated the piece of crack cocaine fit into the dish and 'covers half or slightly more than half of the bottom of the Pyrex dish.' Another piece retrieved from the toilet also fit inside the Pyrex dish, covering about a quarter of it.

{¶ 24} "Barrett also recovered a box of baking soda, and he testified that baking soda 'is one of the key ingredients in making crack-cocaine.' According to Barrett, he has seen baking soda used to manufacture crack '[h]undreds of times. In the houses that we do search

warrants in and in the street crews when we go in and nuisance abate a house for drug complaints, there's almost always baking soda in the residence * * * with a microwave or a stove, some kind of heat source to change the cocaine into crack.' According to Barrett, the interior of the microwave in Spradlin's kitchen 'was caked with pieces of crack cocaine, as when they're cooking it in the Pyrex dish, just like you would at home, if you don't put a cover over your microwaved food, it would explode and go all over in the microwave. The microwave that we recovered had crack all over inside of it.' Barrett testified, '[w]ith everything it takes to make crack [that] was in that house, * * * I would say 99 percent sure crack was cooked in that house.'

{¶ 25} "Duerr's and Smith's testimony linked the firearm found in the toilet tank to the felonious assault for which McDaniel was wanted."

{¶ 26} Jones was indicted on one count of Possession of Crack Cocaine in an amount exceeding 100 grams, with a major-drug-offender specification, one count of Possession of Marijuana in an amount between 1,000 and 5,000 grams, one count of Illegal Manufacture of a Schedule I or II controlled substance, one count of Possession of Cocaine in an amount between 25 and 100 grams, and one count of Having Weapons While Under a Disability. The first four counts were tried to a jury; the Having Weapons While Under a Disability count was tried to the bench.

{¶ 27} Jones moved to suppress the evidence, contending that it was obtained as the result of an unlawful search of the apartment. Following a hearing, the trial court overruled the motion to suppress.

{¶ 28} A motion to sever the trials of the co-defendants was initially granted. Later,

Jones and Spradlin agreed to be tried jointly, even though Spradlin had waived a jury trial as to all of her charges, while Jones had only waived a jury trial with respect to the Having a Weapon While Under a Disability charge. The trial court expressed misgivings about proceeding in this fashion: "I told you all in the beginning what the problem was with doing it this way. You all wanted to go forward with it."

{¶ 29} Jones was convicted on all charges. He received an aggregate sentence of 32 years, and a fine of $35,000. From his conviction and sentence, Jones appeals.


II

{¶ 30} Jones's First Assignment of Error is as follows:

{¶ 31} "THE VERDICT SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE FOUND IN THE SEARCH OF HIS RESIDENCE WHICH WAS OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION FOURTEEN OF THE CONSTITUTION OF OHIO."

{¶ 32} The officers at the scene, who were there to arrest McDaniel, conducted a warrantless "protective sweep" of the premises, for their safety. During this sweep they found a bag of marijuana under a bed, where they were checking to see if anyone was hiding there. They then sought, and obtained, a search warrant for the residence. While they were waiting for the search warrant, Spradlin, who was pregnant, asked to use the bathroom. She consented to a search of the bathroom, in order that she would be allowed to use it. A firearm and a bag

of cocaine were found in the toilet tank.

{¶ 33} Jones contends that the protective sweep was not justified under the test set forth in *Maryland v. Buie* (1990), 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276. This is the same argument Spradlin made in *State v. Spradlin*, supra. We rejected that argument, concluding that the protective sweep was justified. Id., ¶ 35.

{¶ 34} On the authority of *State v. Spradlin*, supra, Jones's First Assignment of Error is overruled.

III

{¶ 35} Jones's Second Assignment of Error is as follows:

{¶ 36} "THE VERDICT AGAINST APPELLANT SHOULD BE REVERSED DUE TO EVIDENTIARY ERROR, WHICH ERRORS ALSO VIOLATED HIS RIGHTS UNDER THE FIFTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

{¶ 37} Again, Jones makes an argument identical to the argument Spradlin, his co-defendant, made in her appeal. This concerns a photograph, Exhibit 62A, which was admitted over objection by both Jones and Spradlin.

{¶ 38} In *State v. Spradlin*, supra, at ¶¶ 65-66, we held:

{¶ 39} "The trial court erred in admitting the photograph for the purpose of showing that Spradlin acted in conformity with the character or reputation suggested by the image. Only highly prejudicial inferences can be drawn from the image of Spradlin, Jones, and other unidentified males, one of which is holding a large sum of money. There is no evidence of

drugs depicted in the photograph, and yet the trial court indicated that the photograph 'can be used to show * * * Ms. Spradlin and/or Mr. Jones were considered players or wannabes with regard to drug culture.' Although the picture was found in her apartment, the location and date of the photograph was unknown. Further, given that Spradlin's possessory interest in the apartment was not disputed [neither was Jones's possessory interest disputed], the probative value of the photograph to establish possession was cumulative and outweighed by its prejudicial effect.

{¶ 40} " 'An error is nevertheless harmless, and must be disregarded, when it does not affect substantial rights. Crim. R. 52(A). If an error would deny a defendant a fair trial, and a substantial right is affected, it is reversible error. It is the burden of a defendant who assigns an error to establish prejudice to that extent.' (Citation omitted.) *State v. Ulrich*, Montgomery App. No. 22129, 2008-Ohio-3608, 2008 WL 2809229, ¶ 41. We agree with Spradlin that the trial court's admission of the photograph was highly prejudicial and reversible error. Thus, this portion of her assigned error is sustained."

{¶ 41} The foregoing analysis applies equally to Jones.

{¶ 42} The State argues that the evidence against Jones was overwhelming, so that he, unlike Spradlin, was not prejudiced by the admission of the photograph. With one exception, we disagree. Spradlin and Jones both lived in the apartment. They both denied that the drugs found therein were theirs. Jones admitted that the bedroom where the guns and the money were found, but not the drugs, was his – Spradlin admitted that it was also her bedroom. Jones denied that the gun found in the toilet tank was his.

{¶ 43} The State argues that when the police finally gained entry into the apartment,

Jones was seen in the back of the apartment, near the kitchen, where a lot of drug-related evidence was found. But Spradlin was also living in the apartment, with Jones. It is unlikely that she would not have had as much access to the kitchen as Jones did.

{¶ 44} Finally, the State points to $3,000 found next to some guns, which Jones admitted was his, and another $8,200, which Jones and Spradlin both testified Spradlin knew nothing about, for which Jones had only a weak explanation. This does support a conclusion that the evidence against Jones on the drug-related charges was somewhat stronger than the evidence against Spradlin, but we conclude that the difference is not so great as to render the error with respect to the admission of the photo not sufficiently prejudicial in Jones's case.

{¶ 45} With respect to the Having Weapons While Under Disability charge, we agree with the State that the improper admission of the photograph cannot have contributed to his conviction by the trial court, because Jones admitted, in his testimony, that he owned a firearm, just not the firearm that was found in the toilet tank.

{¶ 46} Jones's Second Assignment of Error is sustained with respect to his drug-related convictions, and overruled with respect to his Having a Weapon While Under a Disability conviction.


IV

{¶ 47} Jones's Third Assignment of Error is as follows:

{¶ 48} "THE VERDICT AGAINST APPELLANT SHOULD BE REVERSED BECAUSE HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE DUE PROCESS CLAUSES OF THE FIFTH AND

FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

{¶ 49} Jones's ineffective assistance of counsel claims, set forth in his Third Assignment of Error, are moot in view of our disposition of his Second Assignment of Error, since his conviction is being reversed, and this cause is being remanded for a new trial, at which Jones's trial counsel can pursue a different course. The one exception would be Jones's conviction for Having a Weapon While Under Disability, but because the elements of that offense are not disputed, and none of Jones's claims of ineffective assistance of counsel go to his admission of the elements of that offense, any ineffective assistance of counsel cannot have been prejudicial with respect to his conviction for that offense.

{¶ 50} Jones's Third Assignment of Error is overruled.

V

{¶ 51} Jones's Fourth Assignment of Error is as follows:

{¶ 52} "THE SENTENCING OF APPELLANT ON COUNT 8 IS VOID, AS THERE IS NO JOURNAL ENTRY FINDING APPELLANT GUILTY OF THIS OFFENSE."

{¶ 53} Count Eight was the charge of Having a Weapon While Under a Disability, which was tried to the court. The termination entry reads, in pertinent part, as follows:

{¶ 54} "The defendant [Jones] herein having been found Guilty by a jury of the following indicted offenses:

{¶ 55} "Count 5. * * * *

**{¶ 56}** "Count 6.   * * * *

**{¶ 57}** "Count 7.   * * * *

**{¶ 58}** "Count 9.   * * * *

**{¶ 59}** "And having been found Guilty by the Court of the following indicted offense:

**{¶ 60}** "Count 8.   HAVING WEAPONS UNDER DISABILITY (prior drug conv) - 2923.13(A)(3) F3

**{¶ 61}** "was on December 1, 2009, brought before the Court;

**{¶ 62}** "WHEREFORE, it is the JUDGMENT and SENTENCE of the Court that the defendant herein be delivered to the CORRECTION RECEPTION CENTER there to be imprisoned and confined for the following terms;

**{¶ 63}** "Mandatory term of TEN (10) years on Count 5 with an additional term of NINE (9) years on the Major Drug Offender Specification, which shall be served CONSECUTIVE to the sentence imposed; THREE (3) years on Count 6; Mandatory term of THREE (3) years on Count 7; FOUR (4) years on Count 8, and a Mandatory term of THREE years on Count 9.

**{¶ 64}** "All sentences imposed are to be served CONSECUTIVELY to each other for a TOTAL sentence of THIRTY TWO (32) years.

**{¶ 65}** " * * * * ."

**{¶ 66}** A judgment of conviction shall contain: (1) the guilty plea, the jury verdict, or the finding of the court upon which the conviction is based; (2) the sentence; (3) the signature

**{¶ 67}** of the judge; and (4) an entry on the journal by the clerk of court. *State v. Baker*, 119 Ohio st.3d 197, 2008-Ohio-3330.   The journal entry quoted, in part, above satisfies all of these requirements.

**{¶ 68}** Jones's Fourth Assignment of Error is overruled.

VI

**{¶ 69}** Jones's Second Assignment of Error having been sustained in part, and overruled in part; and all of his other assignments of error having been overruled; that part of the judgment of the trial court convicting and sentencing him for the drug-related offenses is Reversed; that part of the judgment of the trial court convicting and sentencing him for Having a Weapon While Under a Disability is Affirmed; and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

HALL, J., Concurring:

**{¶ 70}** I agree that the trial court did not err in overruling the motion to suppress when the circumstances of the encounter at the defendant's residence reasonably justified a protective sweep of the premises, revealing drugs that later justified a search warrant. I also agree that the defendant's conviction for Having a Weapon Under Disability, tried to the court, is not affected by the admission of a photograph, previously determined too prejudicial in the co-defendant's case (*State v. Spradlin,* 187 Ohio 767, 2010-Ohio-2140), because the defendant admitted possession of a weapon.

**{¶ 71}** With regard to the second assignment of error, which challenges the admission of the photograph of the defendant and others in a "gangster" pose, this court has previously determined that the admission of the photo was "highly prejudicial and reversible error" in the

co-defendant's appeal. *Spradlin*, supra. If decided in the first instance, I believe the admission of the exhibit was within the discretion of the trial court and harmless with respect to defendant Jones. However, on the basis of *Stare Decisis* and the interest of consistency I concur in the judgment to sustain the second assignment of error with respect to the drug related charges.

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Andrew T. French
Anthony R. Cicero
Hon. Frances E. McGee